STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Tenney Notices of Violation | } | Docket Nos. 169-9-03 Vtec, |
| (Appeals of Tenney) | } | 186-9-07 Vtec, and 70-4-08 Vtec |
|  | } |  |
|  | } |  |

|  | } |  |
|---|---|---|
| Town of Lincoln, | } |  |
| Plaintiff, | } |  |
|  | } |  |
| v. | } | Docket Nos. 226-12-03 Vtec and 261-11-07 Vtec |
|  | } |  |
| Richard T. Tenney, | } |  |
| Defendant. | } |  |
|  | } |  |

Decision and Order

As Appellant, Richard T. Tenney appealed from three decisions of the Zoning Board of Adjustment (ZBA) of the Town of Lincoln, which had upheld three separate notices of violation issued against him in 2003, April 2007, and September 2007. The Town of Lincoln also brought two enforcement cases against Mr. Tenney, one in 2003 related to the 2003 Notice of Violation, and one in 2007 related to the April 2007 Notice of Violation.

Two other cases related to this property: Docket Nos. 170-9-03 Vtec and 217-11-04 Vtec were resolved in mid-December of 2006 with the grant of a zoning permit and septic system permit to Mr. Tenney for the placement of a mobile home on the property. The 2003 enforcement cases had been placed on inactive status while these two permit cases were litigated.

The September 2007 Notice of Violation was still on appeal to the ZBA at the

1

time of the trial in the 2003 and 2007 cases; that ZBA decision was issued on March 10, 2008 and was appealed to Environmental Court on April 22, 2008. At that time the other four cases had been heard, but the parties were engaged in post-trial discovery regarding an attorney's fees issue and had postponed the briefing schedule on the merits. By agreement of the parties at a telephone conference held on the record on May 5, 2008, Docket No. 70-4-08 Vtec was consolidated with the others already heard. The parties agreed that no additional evidence would be necessary to resolve the new appeal with the others, and that any additional arguments relating to the new appeal could be presented in the parties' post-trial briefs.

Defendant-Appellant Tenney (Mr. Tenney) is represented by Jon Anderson, Esq. and David W. Rugh, Esq.; and the Town of Lincoln is represented by Amanda S.E. Lafferty, Esq. Interested parties Clifford and Jennifer Kile entered appearances in the 2003 and 2007 cases representing themselves; Mr. Kile testified at trial, but the Kiles did not file any requests for findings or memoranda of law.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. Two site visits were taken with the parties and their representatives over the course of this litigation, one on July 15, 2004 and one on November 29, 2007. After the trial, the parties were given the opportunity to submit written memoranda and requests for findings. They extended the time for these filings by agreement, due to post-trial discovery regarding the attorney's fees incurred by the Town.

The parties also filed several post-trial motions.

The Town moved to dismiss Docket No. 70-4-08 Vtec because no statement of questions was ever filed in it. The motion is DENIED. The Court has reviewed the audio tape of the telephone conference held on May 5, 2008. The parties agreed that the most efficient treatment of the new appeal was to fold it in with those already tried, as the post-hearing requests for findings and legal memoranda had not then been filed.

2

The parties agreed that no new evidence would be required, and the discussion at the conference reflects that the issues were adequately disclosed in the Notice of Appeal. The Court will treat the Notice of Appeal as the Statement of Questions.

Defendant-Appellant moved essentially to reopen the evidence to include evidence resulting from excavation on the property to install the mobile home, that occurred after trial, and requested that the evidence be accepted in affidavit form. By entry order dated November 26, 2008, in the four older cases, the Court had given Defendant-Appellant an opportunity to submit by December 5, 2008 additional supporting memoranda to show why that evidence could not have been presented at trial; in the 2008 case, the Court gave Defendant-Appellant the opportunity to show why the supplemental evidence should be allowed. Defendant-Appellant did not do so by the deadline in the scheduling order. Accordingly, the Court will not consider the disputed affidavit; Defendant-Appellant's motion is DENIED.

The Town has also moved for summary judgment in the two 2007 cases, arguing that, by not stating it in the Statement of Questions, Defendant-Appellant waived his argument that the preexisting deposits of discarded items qualify the property as a pre-existing, nonconforming 'junkyard.' The motions for summary judgment are DENIED; Defendant-Appellant is entitled to raise this argument as an affirmative defense.

Upon consideration of the evidence as illustrated by the site visits, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Richard Tenney owns a 50' x 125' rectangular parcel of property (approximately 0.14-acre),[1] with the address of 196 Ripton Road, in the Outlying zoning district, a

---

[1] This area was derived by dividing the area of a 50' x 125' rectangle (6,250 square feet) by the number of square feet in an acre (43,560). As of the summary judgment motions in the Docket No. 217-11-04 Vtec (prior to the survey in evidence as Tenney's Exhibit 6),

district in which single-family dwellings are a permitted use. He acquired the property in August of 1987, and rented out the existing house on the property as a residence until 1999. Between 1999 and 2003 it was used only as a seasonal camp.

The topography and layout of the land in the vicinity of the property are material to the issues in these cases. The attached diagram has been prepared by the Court from Tenney's Exhibit 6 (admitted as a demonstrative exhibit only) to assist in the discussion of the topography and layout. The Zoning Regulations in effect from 1995 to January 17, 2006 are in evidence as Tenney's Exhibit 8; the Zoning Regulations in effect as of January 17, 2006 are in evidence as Town's Exhibit A.

In the vicinity of the property, the Ripton Road runs roughly parallel to and easterly of the New Haven River. The river is located at the bottom of a steep ravine in relation to the elevation of the road. Most of the land in the vicinity of the river, including on the steep slope of the ravine, is wooded. The steep slope of the ravine contains underbrush and trees. The steep slope includes the areas marked as "B" and as "C" on the diagram. The area marked as "A" on the diagram represents the area between the river and the foot of the debris on the steep slope. Property to the north of areas A and B is owned by King and is not otherwise at issue in the present case.

Between the road and the top edge of the slope is a small, flat, open area that includes most of the rectangular Tenney property. Over the course of the six years of litigation, it has been cleared and has grown up again with weeds. Until the November 2006 survey that resulted in Tenney's Exhibit 6 (dated January 8, 2007), Mr. Tenney believed that his property did not extend to or over the edge of the steep slope.

The Kiles own a 103-acre property to the west and south of the Tenney property; most of the Kile property is located westerly of the New Haven River. The Town tax map shows that the Kiles also own the property easterly of the river, in the areas

it was presented as an undisputed fact to the Court that the property was 0.17-acre in area, which is the area shown on the Town's tax map and the Tenney tax bills.

4

marked as "A" and "B" on the diagram.[2]   Although at trial Mr. Kile testified that he no longer claims that land, in his testimony he nevertheless continued to refer to the land in Area B (that is, on the slope) as "our property."  No case or notice of violation against the Kiles has been filed with or appealed to the Environmental Court.

As discussed in this Court's March 21, 2005 decision in Docket No. 217-11-04 Vtec, a single-family dwelling existed on the property long before the Town's adoption of the Zoning Regulations.  The preexisting house was nonconforming with the rear setback requirement of 30 feet. 1995 Zoning Regulations § 325.   The lot also is nonconforming with the 1-acre minimum lot size requirement for single-family dwellings and mobile homes in this district, id., but was entitled to continue as a nonconforming lot and structure, id. § 522.

The existing house was a single-story wood frame structure without a basement. It contained three main spaces or rooms, plus an attached lean-to shed at the southwesterly end of the building, which contained a large oil tank.  The house was clad with very light aqua siding, as may be seen in Town's Exhibit C and Tenney's Exhibit 17 at 1–2.

_____

[2]  In the 2003 and 2007 cases in this litigation, the Town has treated Areas A and B as property owned by Tenney, even though the Town tax map showed the rectangle of Tenney property and showed the remainder to the south and west to be owned by Kile, and the remainder to the north to be owned by King.  While the present litigation was pending, perhaps prompted by the Town's claim that Defendant-Appellant is responsible for the discarded material on Area B, Mr. Tenney filed a claim in the land records to Areas A and B (based on adverse possession).  However, he has not otherwise pursued the claim and has not filed any quiet title or other action in superior court.  In response to the Tenney claim, Mr. Kile asserted a claim to (or resistance to the Tenney adverse possession claim to) the land in areas A and B, and for a time refused permission for entry upon that property.  As of the trial, however, Mr. Kile stated his willingness to allow entry onto the land and to cooperate with any efforts to further clean up the debris on the steep slope.  The Notice of Violation that is the subject of Docket No. 70-4-08 Vtec pertains to "property located north, south and west of 196 Ripton Road," that is, outside the boundaries of the rectangular parcel.  (Town's Ex. G.)

Dumping of household solid waste and junked automobiles occurred on the steep slope behind the existing house, in areas B and C, since at least the mid 1940s, long prior to Mr. Tenney's taking ownership of the rectangular parcel. Car bodies were disposed of in that location in the 1940s, by persons not residing at the 196 Ripton Road property. The materials disposed of onto the steep slope and remaining as of the date of the 2003 Notice of Violation and the 2004 site visit included at least three old automobiles (a Rambler, a 1950s Studebaker, and a 1957 or 1958 Pontiac Chief, one of which had a tree growing through it), box springs, appliances (white goods), bicycles, and automobile tires. Based on the rusted and weathered condition of the materials located near the bottom and middle of the steep slope, the fact that trees of greater than sapling size were growing through some of the debris, the fact that a shopping cart and other items could not have originated from the 196 Ripton Road house, and the fact that Mr. Kile later observed and removed at least ten bags of household waste discarded by others in that location while the property was vacant, the Court finds that the steep slope was used locally as a disposal location and that many items on the steep slope of Area B were disposed there prior to 2002 and without the knowledge of the landowner of the rectangular parcel.

If disposal onto the steep slope of Area B was done by residents of the property, including by Mr. Tenney's tenants between 1987 and 1999, it was not done at Mr. Tenney's direction or with his knowledge. The disposal of discarded materials over the edge of the property onto the steep slope of Area B was not necessarily done by or with the knowledge of any owner or tenant of the rectangular parcel, especially between 1999 and 2002 when the building was only in seasonal use.

An arson fire on April 24, 2002 destroyed a portion of the house and rendered the remaining portion uninhabitable. The process of fighting the fire left piles of destroyed structural materials on the ground in front of the destroyed portion of the structure. The large oil tank was not in the portion that burned. The fire also burned,

6

but left standing, a tree located westerly of the structure and seen in Town's Exhibit C-2 and Tenney's Exhibit 19-A. It is possible that elements of the remaining portion of the house were salvageable, including the cinderblock chimney. No evidence was presented as to what appliances or other contents had been located in the house at the time of the fire, other than the large oil tank. It is possible that the standing walls of the northerly portion of the house could have been used for a new structure in the same footprint, however, no application to rebuild the structure was ever filed.

Mr. Tenney applied in late March of 2003 to place a mobile home on the site. This application did not propose to use or reuse any of the materials from the remaining portion of the former house. The March 2003 application was denied by the Zoning Administrator on the basis that a variance was required, as the proposed mobile home and deck then appeared to be longer than the previously existing house.

Mr. Tenney had the debris remaining on the property after the fire from the destroyed portion of the house removed approximately six months after the fire, although it may have remained on the property in a roll-off dumpster until about March 26, 2003, based upon the date stamp on the photograph in evidence as Tenney's Exhibit 19-A. This photograph shows the roll-off dumpster on the property, containing debris from the yard, and also shows the remaining shell of the house as still standing, and the burned tree as still standing.

Section 560 of the 1995 Zoning Regulations in effect in 2002 (and retained in identical language as § 550 of the 2006 Zoning Regulations) required that:

> [w]ithin one year after a permanent or temporary building or structure has been destroyed or demolished, the owner shall remove all structural materials in accordance with the provisions of current State waste disposal requirements, and shall fill any excavation to normal grade.

No evidence was presented as to the then-current waste disposal requirements of state statute or regulations in effect in 2002 or 2003; however, no party suggested that open dumping of discarded materials onto the surface of a steep slope adjoining a river

7

would have been "in accordance with the provisions of current State waste disposal requirements" in 2002 or 2003. 1995 Zoning Regulations § 560; see Agency of Natural Res. v. Fern Hill Farm, Ltd., No. 129-8-03 Vtec, slip op. at 3–4 (Vt. Envtl. Ct. Jan. 20, 2006) (Wright, J.) (former exemption for on-site disposal of "normal residential solid waste" generated on the site expired in 1991).

While Mr. Tenney's appeal of the denial of the March 2003 application was pending, the Zoning Administrator[3] issued a Notice of Violation on June 17, 2003, stating that the violation was of § 560, and requiring as the remedial action:

> [r]emove all visible and buried remnants of the destroyed building or structure and remove from the site all other associated and remaining solid waste. Removal is to include all motor vehicle parts and bodies located thereon. The site is to be returned to normal grade after removal of the waste materials.

(Town's Ex. B at 1.)

Mr. Tenney first responded by letter to this notice, stating that he had removed the destroyed part of the structure and applied for a building permit for a mobile home, and that the remaining part of the structure would be removed or restored depending on the outcome of the permit process. He appealed the 2003 Notice of Violation to the ZBA, and then appealed the ZBA decision to this Court in Docket No. 169-9-03 Vtec.

The denial of the March 2003 application was appealed to this Court in September 2003 in Docket No. 170-9-03 Vtec. In that case, in May of 2004, the parties agreed that, although the foundation of the former house was 60 feet in length, the

---

[3] While the heading and the text of the Notice of Violation refer to the Town of Lincoln, the Zoning Administrator signed the 2003 Notice of Violation as from the Town of Charlotte. (Town's Ex. B at 2.) As he was the Zoning Administrator for both towns at the time, and as Mr. Tenney lives in Charlotte, the Court is treating the designation of the incorrect town under his signature as a typographical error. Mr. Tenney's suggestions of a personal animus against him on the part of the then-Zoning Administrator, due to their interactions in Charlotte, even if they had been borne out by the evidence, are not relevant to the issues in this case.

house itself had been approximately 75 feet in length, so that the 2003 application for a 70-foot-long mobile home did not actually require a variance. Based on that agreement, the Court in Docket No. 170-9-03 Vtec vacated the ZBA decision on the 2003 application and remanded that application to the Zoning Administrator.

As of May 2004, when the Kiles purchased their property, Mr. Kile observed some pieces of light aqua siding and some storm windows near the top of the steep slope, in the area marked as Area C on the diagram. Mr. Kile removed debris in and around the bottom of the slope and in and near the river, in the area marked as Area A on the diagram.

In the summer of 2004, Mr. Tenney hired the firm of Masterson Excavation, which removed the remaining structure on July 12, 2004, and, by about July 14, 2004, had smoothed or leveled the flat area of the property and covered it with hay mulch. The firm is licensed for handling and properly disposing of certain types of waste, including the removal of underground storage tanks and the removal of gasoline station spills. The Court found the testimony of the firm's principal to be credible that his firm had not pushed any of the debris from the July 12 removal of the house over the bank onto the steep slope, as it would not have been worth the risk to the firm's certifications or the firm's reputation to do so.

The excavating firm pulled down the remaining portion of the house, removed and cut up the burned tree, and disposed of its stump as follows. Three tandem truck loads of demolition debris, each of fourteen to sixteen cubic yards in volume, were disposed of at the Addison County Solid Waste District, for a total cost of $843.20. Three loads of concrete removed from the foundation were disposed of as clean fill off-site. Three cubic yards of wood from the tree were also disposed of off-site. The stump was pushed to or over the edge of the bank. The firm also brought in four tandem loads of sand to fill in the foundation and the stump hole, and cut up and cleaned the oil tank, stacking it by the side of the road so that Mr. Tenney could dispose of it as scrap metal.

9

Some cinderblocks remaining from the demolition of the chimney were salvaged and placed on the property to mark the location of the footprint of the former house. A pipe or pipes were left in place on the property to mark the location of the water supply, former septic system, and former clothesline support.

Thus, as of July 14, 2004, Mr. Tenney had complied with § 560, except for any materials remaining in the area marked as Area C on the diagram. As of that date, he did not believe that Area C was part of his property. Any materials from the house, such as siding or storm windows, located in Area C of the property had been placed there either before 2002, or in the course of the fire-fighting activities, or shortly after the fire, and not during the activities of mid-July 2004.

In August of 2004, the Administrative Officer issued a decision denying the remanded 2003 application, ruling it to be incomplete because it lacked a sewage disposal system construction permit required by § 504.3 of the 1995 Zoning Regulations, and because it lacked documentation of the number of bedrooms in the former house and whether the former house had been served by a leach field. The denial was upheld by the ZBA and appealed to this Court in November 2004 in Docket No. 217-11-04 Vtec. In March of 2005, the Court ruled in favor of the Town that the application was required to obtain a sewage disposal system construction permit, but that questions of whether the existing system qualifies for approval must be resolved by the Sewage Control Officer under the Town's sewage ordinance, and not as part of the zoning appeal. Further litigation was resolved in mid-December of 2006 with the grant of a zoning permit and septic system permit to Mr. Tenney for the placement of a mobile home on the property.

Mr. Tenney had a survey performed in November of 2006, which resulted in Tenney's Exhibit 6. Once he was informed in late 2006 that the rectangle of his property included a small portion of the top of the steep slope, he removed any siding, pieces of glass, storm window frames, or other debris within that area of his property.

Accordingly, by the end of January 2007, Mr. Tenney had complied with § 560 as to the additional materials remaining in the area marked as Area C on the diagram.

The Town expended $349.50 in attorney's fees on these enforcement matters in 2003, expended $1053.65 in 2004, expended $1971.20 in 2005, expended $465 in 2006, and expended $932.17 in January 2007, for a total of $4771.52 to the end of January 2007.

Section 560 of the 1995 Zoning Regulations in effect in 2002 required that:

[w]ithin one year after a permanent or temporary building or structure has been destroyed or demolished, the owner shall remove all structural materials in accordance with the provisions of current State waste disposal requirements, and shall fill any excavation to normal grade.

By April 24, 2003, one year after the fire, Mr. Tenney had removed the structural materials from the portion of the house that had been burned or destroyed in the course of putting out the fire. As of that date, he was in violation of § 560 as to the remainder of the house and its materials, on the rectangular parcel of property, including Area C. By August 2004, Mr. Tenney had removed and properly disposed of the structural materials from the remaining portion of the house on the rectangular parcel of property, except for Area C. By the end of January, 2007, Mr. Tenney had removed and properly disposed of the structural materials from the remaining portion of the house on the rectangular parcel of property, including Area C. Appliances and other house contents, even if there had been evidence that they had come from the burned house and had been disposed of on Area B, do not fall within any reasonable definition of "structural materials," as that term is used in § 560.

Accordingly, the 2003 Notice of Violation is upheld, and judgment is granted to the Town in Docket Nos. 169-9-03 Vtec and 226-12-03 Vtec. Given the history of litigation between these parties, including the fact that Mr. Tenney did obtain the permits required to install the mobile home and septic system on the rectangular parcel, and that he did prevail on the remaining enforcement matters, the appropriate measure

11

of a penalty in Docket No. 226-12-03 Vtec is $4771.52, in recognition of the Town's expenditures on this enforcement action during the period of violation, from April 24, 2003 through the end of January 2007, and recognizing that only a very minor portion of the violation remained (in Area C) after July 14, 2004.

Both the 1995 Zoning Regulations and the 2006 Zoning Regulations are silent as to the use category commonly known as "junkyard." See 24 V.S.A. § 2246. Land-based disposal does not fall within the definition of "industrial" use, and activities not carried on for profit do not fall within the definition of "commercial" use, that are regulated by the Zoning Regulations as conditional use categories. The Zoning Regulations do not contain any list of prohibited uses. In any event, the only use maintained by Mr. Tenney on the rectangular parcel that he owns was that of a single-family residence, which is a permitted use.

Nothing in the state statute, 24 V.S.A. ch. 117, or in the Town's Zoning Regulations, authorizes a Town to take enforcement action against a landowner for failing to obtain a permit for activities he has not undertaken, that occur on neighboring property.[4]

No party provided to the Court any ordinances or regulations of the Town of Lincoln regulating land disposal of solid waste, see 24 V.S.A. §§ 2297–2297b, which would be enforceable in Environmental Court. See 24 V.S.A. § 2297a(j). No party provided to the Court any ordinances or regulations of the Town of Lincoln regulating the dumping of refuse. See 24 V.S.A. §§ 2201, 2291(12). No party provided to the Court any ordinances or regulations of the Town of Lincoln regulating public nuisance. See 24 V.S.A. § 2291(14). No party provided to the Court any ordinances or regulations of the Town of Lincoln regulating junkyards. See 24 V.S.A. §§ 2241–2283.

---

[4] Accordingly, the motion for default judgment in Docket No. 261-11-07 Vtec, the enforcement case based on the April 2007 Notice of Violation, is DENIED.

12

The Court cannot stretch the interpretation of the Zoning Regulations requirement of a change-of-use permit for a non-conforming use, see § 522, to remedy the fact that the Town has no regulations applicable to the discarded debris located on Area B. Murphy Motor Sales, Inc. v. First Nat'l Bank of St. Johnsbury, 122 Vt. 121, 123 (1960) ("A court may not legislate in the guise of construction, and may not insert in a zoning regulation a provision not included by the legislative body."), quoted in In re Champlain College Maple St. Dormitory, 2009 VT 55, ¶¶ 14, 16. Neither the April 2007 Notice of Violation nor the September 2007 Notice of Violation can be upheld, and the 2007 enforcement action must therefore be dismissed.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that, in Docket Nos. 169-9-03 Vtec and 226-12-03 Vtec, Defendant-Appellant did violate § 560 of the 1995 Zoning Regulations, by failing to entirely remove from his property and properly dispose of the structural material from the destroyed structure within a year of the fire. The Court imposes a penalty of $4771.52 in recognition of the Town's expenditures on this enforcement action during the period of violation, from April 24, 2003 through the end of January 2007, and recognizing that only a very minor portion of the violation remained (in Area C) after July 14, 2004. Judgment will be entered in favor of Defendant-Appellant in Docket Nos. 186-9-07 Vtec, 261-11-07 Vtec, and 70-4-08 Vtec.

On or before August 24, 2009, a judgment order shall be prepared by the Town.

Done at Berlin, Vermont, this 14th day of August, 2009.

_____
                    Merideth Wright
                    Environmental Judge

13